UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:08-CV-00048

JOHN DAUGHERTY                                                                               PLAINTIFF

v.

AMERICAN EXPRESS COMPANY,
THE SKLOVER GROUP, INC.,
FEDERAL INSURANCE COMPANY, and
HEALTHEXTRAS, INC.                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the motion of Defendants American Express Company and HealthExtras, Inc. to dismiss Plaintiff's Second Amended Complaint (Docket #112). Plaintiff has responded (Docket #116). Defendants have replied (Docket #120). This matter is now ripe for adjudication. For the following reasons, Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

Plaintiff John Daugherty, an American Express cardholder, was solicited by mail to purchase an accidental disability plan. American Express Company ("American Express") and HealthExtras, Inc. ("HealthExtras") marketed the policy to card members, along with additional benefits, including an accidental loss of life benefit, emergency evacuation services, and an emergency accident and sickness medical expense benefit. The accidental disability policy was issued by Federal Insurance Company ("Federal"), but the other benefits were provided by different insurers. The Sklover Group, Inc. served as the insurance broker.

Plaintiff enrolled in the Plan offered by American Express and HealthExtras. HealthExtras mailed copies of the Plan Summary and Benefit Plan Description to Plaintiff on

October 16, 2001. Plaintiff had ninety days to review the documents and cancel his enrollment for a full refund. Plaintiff chose not to do so, and began paying monthly premiums of $12.95 for $1.5 million lump sum disability insurance coverage.

On February 23, 2003, Plaintiff fell at work and suffered injuries leaving him disabled. In March of 2004, Plaintiff received and thereafter filed a claim form through American Express. On May 5, 2004, Federal informed Plaintiff that his claim had been received. Federal informed Plaintiff on November 29, 2004, that his claim was denied because his injury did not constitute "Permanent Total Disability" as defined by the policy.

## PROCEDURAL HISTORY

Plaintiff filed a complaint in state court on December 27, 2007. The case was removed to this Court on January 17, 2008. Plaintiff filed his First Amended Complaint on June 12, 2008. The Court entered a scheduling order on September 10, 2008, which was amended repeatedly up until the final amendment filed on September 18, 2009. This Order allowed the parties to file amended pleadings up until October 2, 2009.

On September 29, 2009, Defendants HealthExtras and American Express filed a joint motion for summary judgment. On October 2, 2009, Plaintiff filed his Second Amended Complaint. HealthExtras and American Express moved to strike or dismiss Plaintiff's Second Amended Complaint on October 16, 2009. On October 21, 2009, Defendants The Sklover Group, Inc. and Federal also moved to strike the Second Amended Complaint. Plaintiff filed a motion to amend/correct the Second Amended Complaint on November 11, 2009.

On January 29, 2010, the Court bifurcated Plaintiff's breach of contract/coverage claim from his bad faith and other remaining claims and held any discovery or motion practice

regarding the non-coverage claims in abeyance pending the resolution of the coverage claim. On March 18, 2010, Defendants American Express and HealthExtras filed a renewed joint motion for summary judgment addressing only the coverage claim, and the Court denied the previous motion for summary judgment as moot. On June 16, 2010, the Court vacated the jury trial of July 19, 2010, pending further order of the Court.

The Court granted American Express and HealthExtras' motion for summary judgment as to the coverage claims on July 13, 2010. The Court also allowed Plaintiff to amend his First Amended Complaint insofar as his individual claims were concerned, but did not allow Plaintiff to amend his Complaint to add class action allegations. Defendants American Express and HealthExtras filed the present motion to dismiss on August 3, 2010. The present motion addresses the remaining claims against these two defendants.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual

allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## DISCUSSION

Three pending claims against Defendants American Express and HealthExtras [hereinafter "Defendants"] remain: Count V - Unfair Claims Settlement Practices; Count VI - Breach of Duty to Act in Good Faith; and Count VII - Misrepresentation.

### I. Bad Faith Claims

Plaintiff's Counts V and VI allege violations of the Unfair Claims Settlement Practices Act, Ky. Rev. Stat. Ann. § 304.12-230 ("UCSPA"), and the common law duty to act in good faith. The Kentucky Supreme Court has held that "both the statute and the common law tort apply only to persons or entities engaged in the business of insurance . . . ." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 95 (Ky. 2000). Defendants argue that Plaintiff's Count V and VI must be dismissed because the Court has already ruled that there was no privity of contract between Plaintiff and Defendants, and Plaintiff has no claim for breach of contract against Defendants. *See* Mem. Op., DN 105, p. 4-6. "Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Davidson*, 25 S.W.3d at 100; *see also Ennes v. H&R Block Eastern Tax Serv., Inc.*, No. 3:01CV-447-H, 2002 WL 226345, at *3 (W.D. Ky. Jan. 11, 2002) ("[T]he only Kentucky decisions that have recognized bad faith tort

4

claims have involved suits between insurers and insureds.").

Plaintiff's response to Defendants' motion argues privity of contract is not the sole basis by which Defendants may be held liable, and that Defendants were engaged in the business of insurance for purposes of his bad faith claims. In support of his claim, Plaintiff cites to two cases: *Davidson*, 25 S.W.3d at 95, and *Western Leasing, Inc. v. Acordia of Ky., Inc.*, No. 2008-CA-002237-MR, 2010 WL 1814959, at *9 (Ky. Ct. App. May 7, 2010).

The portion to which Plaintiff cites in *Davidson* states: "We conclude that both the statute and the common law tort apply only to persons or entities engaged in the business of insurance . . . ." 25 S.W.3d at 95. Plaintiff argues that Defendants were engaged in the business of insurance, and can therefore be held liable. However, Plaintiff's narrow interpretation of *Davidson* is incomplete. The Kentucky Supreme Court stated that "the UCSPA was clearly intended to regulate the conduct of insurance companies." *Id.* at 96. Plaintiff ignores the Kentucky Supreme Court's statement that there must be a contractual obligation. *Id.* at 100 ("The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is *contractually obligated* to pay." (emphasis in original)).

In *Western Leasing*, the Kentucky Court of Appeals considered a case in which the trial court had determined that insurance brokers were not "engaged in the business of insurance" as that term is applied in the UCSPA. 2010 WL 1814959 at *9. The Kentucky Court of Appeals held that an insurance broker is an agent of the insured, and insureds are not subject to the UCSPA. *Id.* Plaintiff argues that this case supports his argument that Defendants may be held liable because they were engaged in the business of insurance, and were not insureds. The

Kentucky Court of Appeals in *Western Leasing* also noted, however, that "[l]anguage in *Davidson*, while dicta, further suggests that only persons 'entering into contracts of insurance' may be considered to be engaged in the 'business of insurance.'" *Id.* (citing *Davidson*, 25 S.W.3d at 98); *accord Ky. Nat. Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky. Ct. App. 2004) ("[W]e find compelling the Court's unequivocally firm holding [in *Davidson*] that, in the absence of a contractual obligation to pay, there can be no action for bad faith."). Accordingly, the Court finds that *Western Leasing* does not support Plaintiff's claim.

The Sixth Circuit has also acknowledged that privity is necessary for liability under Kentucky common law bad faith claims. *See Torres v. Am. Employers Ins. Co.*, 151 F. App'x 402, 410 (6th Cir. 2005) ("A proper synthesis of these cases produces an undeniable understanding that Kentucky common law bad faith arises in the insurance context only when a privity relationship exists between claimant and the insurance company.").

The Court finds that Kentucky case law clearly acknowledges that a contractual obligation must exist in order to find a party liable under the UCSPA or the common law duty to act in good faith. Finding no contractual obligation on the part of Defendants, Plaintiff's Counts V and VI must be dismissed.

## II.     Misrepresentation Claim

Plaintiff's Count VII alleges that Defendants misrepresented the coverage provided under the accidental disability plan. Defendants argue that Plaintiff has failed to establish the elements of misrepresentation by clear and convincing evidence. Defendants state that in order for Plaintiff's claim to succeed, Plaintiff must establish the following elements of fraud by clear and convincing evidence:

6

    a)  material representation
    b)  which is false
    c)  known to be false or made recklessly
    d)  made with inducement to be acted upon
    e)  acted in reliance thereon and
    f)  causing injury.

*United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. 1978)).

  According to Defendants, a fair reading of the Solicitation Letter upon which Plaintiff bases his claim demonstrates that nothing was misrepresented as to the provisions in the policy. Defendants also argue that Plaintiff's reliance on certain statements in the Solicitation Letter, to the exclusion of others, is unreasonable.

  Plaintiff alleges that Defendants knowingly misrepresented certain provisions of the accidental disability policy through solicitations and promotional materials. Plaintiff's Second Amended Complaint alleges that Defendants misrepresented the terms of the policy through promotional materials that:

  a.  Utilized a misleading policy name;

  b.  Us[ed] an endorsement without disclosing the compensation paid of the endorsement;

  c.  Us[ed] an endorsement without disclosing that the celebrity would not qualify for benefits under the Policy based upon Defendants' undisclosed interpretation;

  d.  Emphasized in oversized, bold letters "Financial Security" and stated "You're covered with up to $1.5 Million if an accident leaves you permanently disabled";

  e.  Stated, without qualification or further definition, that "The Accident Disability Policy *from* American Express provides you with $1 million in one lump sum if you are permanently disabled due to an accident and can't return to work.";

  f.  Minimized and obscured exceptions, reductions, and the limitations of the policy by listing them in small print on the back of the solicitation;

7

g. Failed to provide a conspicuous, unambiguous definition of disability; and

h. Promoted for sale an unconscionable insurance policy with illusory coverage of no real economic value.

Second Amend. Compl., DN 52, ¶ 199. Plaintiff argues that these factual allegations are sufficient to support his misrepresentation claim.

One of the key elements of fraud, as set out in the standard above, is that the material representation be "false." *See, e.g.*, *Summers Equip., LLC v. VFS U.S. LLC*, No. 2009-CA-001321-MR, 2010 WL 4137434, at *3 (Ky. Ct. App. Oct. 22, 2010) ("[O]ne of the essential elements of a claim of fraudulent misrepresentation is a material false misrepresentation."). None of Plaintiff's allegations state that Defendants made a false statement in the Solicitation Letter. The closest allegation of a false representation is part (e), which references Defendants' statement that "The Accident Disability Policy *from* American Express provides you with $1 million in one lump sum if you are permanently disabled due to an accident and can't return to work." Solicitation Letter, DN 112-3, p. 1. Even though this statement was offered without qualification, however, the Solicitation Letter discloses that to make a claim under the policy, the claimant must produce written proof that an accidental injury resulted "in the entire and irrevocable loss of use of both hands or both feet, or one hand and one foot, or the sight of both eyes, or the hearing of both ears, or the ability to speak . . . ." Solicitation Letter, DN 112-3, p. 2.

Accordingly, the Court finds that Plaintiff has failed to allege sufficient facts to support a claim for misrepresentation under Kentucky law because he has failed to point to a false representation. Plaintiff's response to Defendants' motion argues, however, that his misrepresentation claim is not based upon fraud. Rather, Plaintiff asserts that his claim is statutory in nature. Plaintiff cites to Kentucky Revised Statutes sections 304.12-020(1), 304.12-

020(2), and 304.12-230(1),[1] and Kentucky Administrative Regulations 806 KAR 12:010-3(1), 806 KAR 12:010-3(2), 806 KAR 12:010-5, 806 KAR 12:010-6, 806 KAR 12:010-8, and 806 KAR 12:010-19(1).[2] Although the Second Amended Complaint lacks any reference to such statutes and regulations, and the language of Count VII uses the common law terms "knowingly misrepresented" and "reasonable reliance," the Court will consider Plaintiff's argument.

Kentucky Revised Statutes Chapter 304 is the Insurance Code. Subtitle 12 of that Chapter addresses "Trade Practices and Frauds." Advertising is regulated by Section 304.12-020. That section states:

> No person shall make or disseminate orally or in other manner any advertisement, information, matter, statement, or thing:
>
> (1) Misrepresenting the terms of any policy or the benefits or advantages thereof or dividends or share of surplus to be received thereon, or setting forth false or misleading information or estimates as to dividends or share of surplus previously paid on similar policies.
>
> (2) Using any name or title of any policy or class of policies misrepresenting the true nature thereof.

Ky. Rev. Stat. Ann. § 304.12-020. "KRS 304.12-020 provides a statutory cause of action separate from the UCSPA." *Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002-CA-000801-MR, 2004 WL 2011375, at *6 (Ky. Ct. App. Sept. 10, 2004).

The regulations in 806 Ky. Admin. Regs. 12:010 are intended to clarify the advertising

---

[1]Section 304.12-230(1) is part of the UCSPA, which the Court has already determined does not apply to Defendants.

[2]Plaintiff asserts that this statutory and administrative authority is a non-exhaustive list. The Court will not, however, engage in a fishing expedition for additional statutory authority. Accordingly, the Court considers only those statutes and regulations cited by Plaintiff in his brief.

9

rules outlined in section 304.12-020. Plaintiff cites the following regulations as those applicable to this case:

>    (1)   Advertisements shall be truthful and not misleading in fact or in implication. Words or phrases the meaning of which is clear only by implication or by familiarity with insurance terminology shall not be used.
>
>    (2)   Words, phrases, or illustrations shall not be used in a manner which misleads or has the capacity and tendency to deceive as to the extent of any policy benefit payable, loss covered or premium payable. An advertisement relating to any policy benefit payable, loss covered or premium payable shall be sufficiently complete and clear as to avoid deception or the capacity and tendency to deceive, to wit:
>
>    (a)   The words and phrases "all," "full," "complete," "comprehensive," "up to," "as high as," "this policy will pay your hospital and surgical bills," or "this policy will replace your income," or similar words and phrases shall not be used so as to exaggerate any benefit beyond the terms of the policy, but may be used only in such manner as fairly describes such benefit.

806 Ky. Admin. Regs. 12:010-3(1), (2).

>    All information required to be disclosed by the advertisement regulations shall be set out conspicuously and in close conjunction with the statements to which such information relates or under appropriate captions of such prominence that is [sic] shall not be minimized, rendered obscure or presented in an ambiguous fashion or intermingled with the context of the advertisement so as to be confusing or misleading.

806 Ky. Admin. Regs. 12:010-5.

>    Testimonials used in advertisements must be genuine, represent the current opinion of the author, be applicable to the policy advertising and be accurately reproduced. The insurer, in using a testimonial makes as its own all of the statements contained therein, and all the advertisement including such statements is subject to all of the provisions of the advertisement regulations.

806 Ky. Admin. Regs. 12:010-6.

>    An offer in an advertisement of free inspection of a policy or offer of a premium refund is not a cure for misleading or deceptive statements contained in such

> advertisement.

806 Ky. Admin. Regs. 12:010-8.

> (1) The purpose and intent of this administrative regulation is to prohibit the transmission of information in the form of advertisements or otherwise which might be deceptive, misleading or untrue. The general intent, therefore, and the provisions of this administrative regulation not expressly limited to a particular type of insurance, shall be applied to all insurance on subjects of risk located in or to be performed in this state.

806 Ky. Admin. Regs. 12:010-19(1). In citing this statutory and regulatory authority, Plaintiff argues that his Second Amended Complaint contains enough facts to state a claim to relief that is plausible on its face.

Defendants offer two arguments in response to Plaintiff's statutory allegations. First, Defendants assert that they are not parties subject to the Kentucky Insurance Code. Defendants also argue that any claim Plaintiff may have is barred by the statute of limitations.

Defendants argue that they are not subject to the Kentucky Insurance Code because the Code provides an express exemption for credit card companies. Section 304.9-051 defines an "administrator" and then states that "[a] credit card issuing company which advances for and collects premiums or charges from its credit card holders who have authorized it to do so, provided such company does not adjust or settle claims" is not an administrator. Ky. Rev. Stat. Ann. § 304.9-051(1)(i). This definition, however, refers only to Subtitle 9 of the Kentucky Insurance Code. Plaintiff's reliance is placed on Subtitle 12. Accordingly, Defendants' exemption argument must fail. *See also* 806 Ky. Admin. Regs. 12:010-2 ("The advertisement regulations shall apply to agents and brokers to the extent that they are responsible for the advertisement of any policy.").

"An action upon a liability created by statute, when no other time is fixed by the statute

creating the liability" is subject to a five year statute of limitations. Ky. Rev. Stat. Ann. § 413.120(2). "An action for relief or damages on the ground of fraud or mistake" is also subject to a five year limitations period. Ky. Rev. Stat. Ann. § 413.120(12). Defendants argue that Plaintiff's claim is barred by the statute of limitations because Plaintiff should have discovered his claim in November of 2001 after he received the Plan documents. Plaintiff did not file his Complaint until December 27, 2007. In response, Plaintiff asserts that his claim is timely because his cause of action did not accrue until his disability benefit was denied. Plaintiff became totally disabled in February of 2003, and he filed his claim in March of 2004. His claim was initially denied in November of 2004, and finally denied in October of 2007. Plaintiff asserts, therefore, that his claim did not accrue until either November of 2004 or October of 2007; the use of either date satisfies the statute of limitations.

"According to Kentucky case law, a cause of action accrues, and the limitations period begins to run, when 'the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.'" *Cantrell v. Ashland Oil, Inc.*, Nos. 2006-SC-000763-DG, 2007-SC-000818-DG, 2010 WL 1006391, at *10 (Ky. Mar. 18, 2010) (quoting *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979)). The issue in this case is when Plaintiff suffered an injury.

The Court finds that Plaintiff should have known he was injured, in that he had purchased a policy which did not amount to what he thought he was purchasing, at the time he received the Plan documents which contained the definitions and terms of the policy. It was at this point that Plaintiff should have become aware that the Solicitation Letter had misled him into purchasing

an insurance policy that did not provide the type of coverage he desired. In addition, Plaintiff was aware that American Express was marketing the policy, and he had suffered damages at least to the extent he had paid for the policy. "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation . . . ." Ky. Rev. Stat. Ann. § 466.070.

There is no disagreement from Plaintiff that he had received the Plan documents by November of 2001. Thus, Plaintiff's claim accrued at that time. He had until November of 2006 by which to file his Complaint. Plaintiff's Complaint was not filed until December 27, 2007. Accordingly Plaintiff's misrepresentation claim, whether statutory or under common law, must fail.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is GRANTED.

An appropriate order shall issue.