UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:08-CV-00048-R

JOHN DAUGHERTY                                                                                          PLAINTIFF

v.

CHUBB GROUP OF INSURANCE COMPANIES, *et al.*                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Motion to Remand to the Circuit Court of Hardin County, Kentucky.  DN 169.  Defendants have responded.  DN 173.  Plaintiff has replied.  DN 183.  This matter is now ripe for adjudication.  For the following reasons, Plaintiff's motion is DENIED.

BACKGROUND

Plaintiff John Daugherty filed his original complaint in the Circuit Court of Hardin County, Kentucky on December 27, 2007.  The Defendants subsequently removed the case to this Court on January 17, 2008.  Defendants' removal was based on 28 U.S.C. §§ 1332, 1441, and 1446.  More particularly, the Defendants claimed removal was proper based on the Court's diversity jurisdiction and that the amount in controversy exceeded $75,000.  *See* 28 U.S.C. § 1332(a).  On June 16, 2008, Daugherty filed an amended complaint with this Court.  The heart of Daugherty's claim is that he was wrongfully denied a $1.5 million payment under a disability insurance policy provided by the Defendants.  Daugherty also asserts various other common law and statutory claims.

On September 2, 2011, more than three years and a half years after filing his original complaint with the Hardin County Circuit Court, and more than three years after filing his amended complaint with this Court, Daugherty filed the present motion to remand.  In his motion

1

the Plaintiff claims that this Court lacks jurisdiction to hear his claims and must remand because the parties are not completely diverse. Reading 28 U.S.C § 1332(c)(1) in conjunction with the Sixth Circuit's opinion in *Lee-Lipstreu v. Chubb Group of Ins. Cos.*, 329 F.3d 898 (6th Cir. 2003), Daugherty argues that the unique facts of his case fall within the "certain situations" exception envisioned by the *Lee-Lipstreau* Court. If Daugherty is covered by this exception, which is explained in more detail below, the Defendants would, for the purposes of § 1332(c)(1), be considered to have the same citizenship as Daugherty and diversity would be destroyed, divesting this Court of jurisdiction.

## STANDARD

Federal courts are courts of limited jurisdiction, meaning they may only hear cases if granted jurisdiction over the subject matter by the Constitution or U.S. law. The two most common forms of subject matter jurisdiction are federal question and diversity jurisdiction. *See* 28 U.S.C. §§1331-32. It is a fundamental principle of the U.S. legal system that a federal court must have subject matter jurisdiction before it has any power over the parties or the issue. A party may challenge a court's jurisdiction to hear a case "'any time in the same civil action, even initially at the highest appellate instance.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). "A motion to remand the case on the basis of any defect *other than* lack of subject matter jurisdiction must be made 30 days after the filing of the notice of removal under section 1446(a). If *at any time before final judgment* it appears that the district court lacks subject matter jurisdiction [e.g., lacks federal question or diversity jurisdiction], the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). Finally, parties cannot waive or "consent to subject matter jurisdiction and courts must constantly examine subject matter jurisdiction 'on their own initiative.'" *Sprowls v. Oakwood*

*Mobile Homes, Inc.*, 119 F. Supp. 2d 694, 695 (W.D. Ky. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

## DISCUSSION

Plaintiff John Daugherty has filed a motion to remand, claiming that removal was improper and that the Court has no jurisdiction to hear the case because the parties are not completely diverse. Since there is no federal question involved, this Court would be required to remand, pursuant to the mandate of 28 U.S.C. § 1447(c), if it finds that the parties are, in fact, not diverse.

### I.     The Background of 28 U.S.C § 1332(c)(1).

Daugherty bases his motion on 28 U.S.C. § 1332(c)(1). In relevant part that section states:

> For the purposes of this section and section 1441 [the removal statute] -- in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen . . . .

28 U.S.C. § 1332(c)(1). Congress amended this portion of § 1332 in 1964 in direct response to changes in state law enacted by Louisiana and Wisconsin. *See Aetna Cas. Ins. Co. v. Greene*, 606 F.2d 123, 125 (6th Cir. 1979). These state statutes, generally called "direct action" statutes, "allow[ed] an injured party to pursue a right of action against an out-of-state insurance company, without joining the in-state insured." *Id.* As a result, these statutes greatly expanded the diversity jurisdiction of the federal district courts "by doing away with an injured party's obligation to join an insured who is a resident of the same state." *Id.* These laws opened the proverbial "floodgates," and the dockets of the federal district courts in Louisiana and Wisconsin were quickly inundated. *Id.* To remedy these docket problems, Congress enacted the above stated portion of § 1332(c)(1). After enactment, when an injured party sued an insurer and failed

3

to join the insured as a party-defendant, the insurer was cloaked with the citizenship of the non-party insured and, in many circumstances, diversity was destroyed, eliminating the jurisdiction of the federal courts.

**II.     Mechanics of 28 U.S.C § 1332(c)(1).**

The relevant portion of § 1332(c)(1) contains two operative components. In order to cloak the insurer in the citizenship of the insured, the plaintiff's must pursue a "direct action" against an insurer, and the claim must be for "a policy or contract of liability insurance." *See* 28 U.S.C. § 1332(c)(1). These two components will be considered by the Court in turn. Because Daugherty's claims are not a "direct action" and are not for a "policy or contract of liability insurance," as that terms has been interpreted by courts in this circuit, Daugherty's motion to remand must be denied.

**A. Daugherty is not pursuing a "direct action" against an insurer.**

As used in § 1332(c)(1), "direct action" is a term of art. As described above, the typical direct action is one in which an injured party sues the insurer of a tortfeasor without joining the tortfeasor to the case. It is known as a "direct action" because the plaintiff, who is not the insured, directly sues the party who will ultimately pay, the insurer, without joining the insured as a party-defendant. Section 1332(c)(1) is clear that before the insurer can be cloaked in the citizenship of the insured, the plaintiff must bring a direct action against the insurer.

In the present case, Plaintiff Daugherty is not bringing a direct action against the insurer of a non-party insured. Instead, Daugherty, himself, is the insured bringing a first-party claim against his insurer. Daugherty has sued to recover a $1.5 million lump sum payment from a disability insurance policy. Daugherty allegedly paid premiums for the policy to American Express, which in turn paid a portion of the premiums to Federal Insurance Company

("Federal"), the party that ultimately issued and provided the disability policy to Daugherty. In order for this to be a direct action within the meaning of § 1332(c)(1), American Express would have to be insured, Federal the insurer, and Daugherty a third-party seeking to recover from Federal for insurance that it provided to American Express. These simply are not the facts of the case presented. Daugherty is seeking to recover payment under a disability insurance policy that he claims is owed to him by Federal. Daugherty admits as much in his reply brief. "Mr. Daugherty's claim against Federal . . . is technically an insured suing an insurer . . . ." DN 183, p. 4. Because Daugherty is an insured suing his insurer, § 1332(c)(1) is inapplicable to the present case and will not divest the Court of jurisdiction.

### 1. Daugherty does not fall within the "certain situations" exception of *Lee-Lipstreau*.

In a second attempt to destroying diversity under § 1332(c)(1), Daugherty claims that the unique facts of his case fit within the "certain situations" exception contemplated by the Sixth Circuit in *Lee-Lipstreau v. Chubb Group of Ins. Cos.*, 329 F.3d 898 (6th Cir. 2003).

In *Lee-Lipstreau*, the plaintiffs claimed that the defendant insurance company "was obligated to pay them underinsured motorist benefits pursuant to a commercial general liability policy issued by the defendant to Edith Lee-Lipstreau's employer, National City Corporation." *Id.* at 899. Before the court ultimately concluded that the policy did not provide automobile liability insurance coverage, it addressed the jurisdictional reach of § 1332(c)(1). *See id.* at 899-900. The court found that the plaintiff was an "insured" under her employer's policy and that § 1332(c)(1) was not applicable because "when an injured party sues her own uninsured motorist carrier, it is not a direct action." *Id.* at 900. In coming to this conclusion the court recognized that "the direct action provision [of § 1332(c)(1)] applies in *certain situations* involving insureds and insurers, but we conclude that it does not apply here." *Id.* (emphasis added). Although it

5

precluded use of the "direct action" provision of § 1332(c)(1) in *Lee-Lipstreau*, the court's express language indicates that there could be "certain situations" in which a first-party insured could sue his insurer under § 1332(c)(1) and destroy diversity jurisdiction.  It is important to note that the *Lee-Lipstreau* Court did not expand upon this "certain situations" exception, provided no guidelines for its use, and cited no cases where it had been applied.

In light of the language in *Lee-Lipstreau*, Daugherty claims that his unique factual situation fit squarely within the "certain situations" exception and that the Court must remand because it lacks diversity jurisdiction.  Daugherty bases his "certain situations" argument on two grounds.  First, he finds significance in the fact that he seeks to collect payment under a disability insurance policy, which is different than the uninsured/underinsured motorist (UIM) coverage at issue in *Lee-Lipstreau*.  As explained below, district courts in the Sixth Circuit have previously ruled that § 1332(c)(1) is only applicable to "liability insurance" and not "disability insurance."  The Court finds those decisions persuasive, and, as a result, disability insurance is not a type that would fall within the "certain situations" exception.

Second, Daugherty claims that the "certain situations" exception should apply to his claims because his disability insurance was not directly negotiated with Federal.  In his Motion and Relpy, Daugherty details the facts of how he obtained disability coverage from Federal through American Express.  He finds significance in the fact that he never negotiated with or had direct contact with Federal until he attempted to collect the benefits of his policy.  Additionally, Daugherty claims he never received a copy of the disability policy, but instead was only given a summary of the benefits provided to him by American Express.  While these fact are indeed different than *Lee-Lipstreau*, the Court finds them unpersuasive.  No matter how many degrees of separation exist between Daugherty and Federal, at the end of the analysis the Plaintiff is still

the insured and Federal is still the insurer of the disability policy. Section 1332(c)(1) was not designed to allow first-party insureds to avoid the federal courts' diversity jurisdiction. Indeed, "[a]pplying the direct action provision to a dispute solely between an insured and her own insurance company would result in an absurdity -- federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and the defendant, would always be considered citizens of the same state." *Id.* at 899-900.

As stated above, the *Lee-Lipstreau* Court did not provide any guidelines for the "certain situations" exception and cited no cases where it was applied. More significantly, although Daugherty has shown that there are some factual differences between his claims and those in *Lee-Lipstreau*, he has failed to cite any cases where the "certain situations" exception was applied so as to cloak an insurer in the citizenship of the first-party insured and destroy diversity jurisdiction. In the end, Daugherty's claims is still an insured suing an insurer, and the Court is not persuaded that this is one of the "certain situations" that would allow Daugherty to avoid diversity jurisdiction.

### B. Daugherty's claims are for "disability" insurance, not "liability" insurance.

The first operative component of § 1332(c)(1) requires a plaintiff to pursue a "direct action" against an insurer. The second operative component requires that the action be for a "policy or contract of liability insurance." Although § 1332(c)(1) is not helpful to Daugherty because he is not pursuing a "direct action," Daugherty's claims also fail because he has sued to recover benefits under a "disability" insurance policy and not a "liability" policy.

Opinions by district courts in the Sixth Circuit on the issue of whether "disability" insurance is a "liability" policy for the purposes of § 1332(c)(1) are conflicting and are worth reviewing. The first court to address this issue determined that disability insurance *is* a liability

7

policy under § 1332(c)(1). *See Tyson v. Conn. Gen. Life Ins.*, 495 F.Supp. 240 (E.D. Mich. 1980) (Joiner, J.).[1] In *Tyson*, the plaintiff, a Michigan citizen, sued the defendant insurance company, a Connecticut corporation, to collect the benefits of a disability policy provided through her employer. *Id.* at 241. In overcoming the "direct action" hurdle, the court found that the "[p]laintiff is, in essence, seeking recovery from an insurer pursuant to an obligation undertaken by her employer. Thus this is a 'direct action against the insurer' under the proviso in § 1332(c)(1)." *Id.* at 243. Next, turning to the definition of "liability" insurance, the court found that "the term 'liability insurance' has over the years come to be accepted in the Courts as meaning an indemnity agreement which protects the insured against his liability to others . . . ." *Id*. at 242 (quoting *Aetna Cas. & Sur. Ins. Co. v. Greene*, 606 F.2d 123, 126 (6th Cir. 1979) (quoting *Twin City Fire Ins. Co. v. Wilkerson*, 247 F. Supp. 766 (E.D. Tenn. 1965))).

> [W]hen an insurer protects a third person against that person's liability to another, the insurer assumes the third person's citizenship for purpose of diversity of citizenship federal subject matter jurisdiction. The liability of the third person can arise under common law or statute. Thus, a tort liability insurer assumes the

---

[1] The *Tyson* case was cited approvingly by the Sixth Circuit in *Ford Motor Co. v. Insurance Co. of N. Am.*, 669 F.2d. 421 (6th Cir. 1982). Of *Tyson*, the court said, "We conclude that the decisions in *McMurry* and *Tyson* contain the correct view of the applicability of the 1964 amendment [of § 1332(c)(1)] to actions under the Michigan *no-fault* act." *Ford*, 669 F.2d at 425 (emphasis added). A close reading of this language shows that the *Ford* Court approved of *Tyson* only so far as it concerned Michigan no-fault insurance. The term "disability insurance" does not appear once in the *Ford* decision, and the court does not appear to recognize the fact that *Tyson* was a disability, not a no-fault, insurance case. As stated by Chief Judge Feikens, "[t]he Court in *Ford Motor Co.* concludes that *Tyson* contains 'the correct view of the applicability of the 1964 amendments to actions under the Michigan no-fault act.' It does. *Tyson* does not, however, contain the correct view of the applicability [§ 1332(c)(1)] to the instant situation, or the one it dealt with." *Kosmyna v. Bankers Life & Cas. Co.*, 550 F.Supp. 142 (E.D. Mich. 1982) (quoting *Ford*, 669 F.2d at 425). As stated by another court that considered the interaction of *Ford* and *Tyson*:

> [T]his Court does not find *Ford* to be controlling. Two references to *Tyson* in *Ford* suggest that the Sixth Circuit was laboring under the impression that *Tyson* was a no-fault action. *Tyson* is clearly *not* a no fault action. The difference between the action in *Tyson* and the action in *Ford* is sufficient enough for this Court to respectfully conclude that the Sixth Circuit did not fully appreciate the consequences of its statement that *Tyson* represents the proper view. For this reason, the Court concludes that it is not bound to follow the lead of the Sixth Circuit in *Ford*.

*Spooner v. Paul Revere Life Ins. Co.*, 578 F.Supp. 369, 372 (E.D. Mich. 1984) (emphasis original). In the present action, this Court agrees with *Kosmyna* and *Spooner* that the *Ford* decision is not controlling because *Ford*'s approval of *Tyson* and ultimate holding only concerned § 1332(c)(1) as it applied to no-fault insurance. *Ford* did not approve of *Tyson* on the issue of disability insurance. As a result, *Ford* is not controlling in the present case.

> citizenship of the tortfeasor, a workers' compensation insurer assumes the citizenship of the employers, and a No-Fault insurer assumes the citizenship of its insured. Where the third person's liability arises by operation of contract law, should the rule be any different? This court thinks not. . . . Contract law creates an obligation to provide disability protection binding on the employer. The insurance agreement is, in turn, an agreement which protects the insured against his liability to others.

*Id.* at 242 (citation omitted). Applying this rationale, the *Tyson* Court focused on the relationship between the *employer* and the disability insurer, not the *employee* and the insurer, when finding that disability insurance was liability insurance for the purpose of § 1332(c)(1). In essence, the disability policy was liability insurance because the employer was required by an employment contract to provide the employee with disability insurance, and, in such an arrangement, the court found that the insurer indemnified the employer for any failure to provide disability insurance. In the end, *Tyson* stands for the proposition that employer-provided disability insurance is liability insurance for the purposes of § 1332(c)(1).

Two courts from the same district subsequently considered the same issue and disagreed with the reasoning in *Tyson*. These courts held that disability insurance *is not* liability insurance for the purposes of § 1332(c)(1). *See Kosmyna v. Bankers Life & Cas. Co.*, 550 F.Supp. 142 (E.D. Mich. 1982) (Feikens, C.J.); *Spooner v. Paul Revere Life Ins. Co.*, 578 F.Supp. 369 (E.D. Mich. 1984) (Freeman, J.). *Kosmyna* directly addressed the issue of "whether [a disability] policy is a 'policy or contract of liability insurance' within the meaning of [§ 1332(c)(1)]." *Kosmyna*, 550 F.Supp. at 142. In order to reach the conclusion that disability insurance is *not* liability insurance, Chief Judge Feikens pointed out the errors in reasoning that plague the *Tyson* decision. The *Tyson* Court found that under a disability policy the employer, not the employee, was the insured. Chief Judge Feikens took issue with this assertion and found that "under the terms of a disability income policy, the insured is not the employer, but the employee. The

9

insured, contrary to the assertion in *Tyson*, is not protected against incurring liability to others. The insured employee is merely protected against loss of income." *Id.* at 143. "*Tyson* does not . . . contain the correct view of the applicability of the [§ 1332(c)(1)] to [disability insurance]." *Id.* at 144. Thus, *Kosmyna* holds that disability insurance is *not* liability insurance because there is not a three-party relationship involved with disability insurance. The insurer is not indemnifying the insured for losses sustained by a third party. The insurer is merely agreeing to pay the insured for losses of income that the *insured* might incur as the result of a disability. The very structure of disability insurance (no payment of benefits to a third party outside of the contractual relationship) precludes it from being liability insurance (created for the purpose of paying benefits to a third party outside of the contractual relationship).

The Eastern District of Michigan again addressed the scope and applicability of § 1332(c)(1) in *Spooner*. *Spooner* was another suit involving a plaintiff who sought to recover benefits under disability policies provided by his employer. *Spooner*, 578 F.Supp. at 369. Judge Freeman reviewed the *Tyson* and *Kosmyna* decisions and found "the reasoning of *Kosmyna* persuasive. The insured [in a disability policy] is indeed the employee and not the employer." *Id.* at 373.

> [A] careful reading of *Tyson* reveals the flaw in its logic. The application of [§ 1332(c)(1)] to an insurance company in a typical tort action is proper because the tortfeasor has purchased the policy as protection against liability arising from his breach of a duty owed to the injured party. The typical action is such that the act for which liability is sought to be imposed against the insurance company is the same act for which liability could be imposed against the insured. In this sense, the insurance company derives its liability from the insured. With the 1964 amendment to [§ 1332(c)(1)], Congress intended that the insurer derive its citizenship from the insured as well. In contrast, in actions such as the case at hand, the injured party could not seek to impose liability on the insurance company and the employer for the same act. The employer did not take any action for which the plaintiff now seeks recovery. Therefore, the Court concludes that [§ 1332(c)(1)] is not applicable [in actions to recover under disability policies]."

10

*Id.* (citations omitted)  The Court finds the opinions in *Kosmyna* and *Spooner* logically sound and persuasive.

Section 1332(c)(1) speaks explicitly in terms of direct actions against the "insurer of a policy or contract of *liability* insurance."  28 U.S.C. § 1332(c)(1) (emphasis added).  Liability insurance naturally involves three parties: the insured, the insurer, and the injured party, who collects the benefits of the policy as a result of the insured's negligence or other liability-creating action.  On the other hand, disability insurance is a two-party transaction.  The insured collects the benefits of the policy from the insurer when the insured, himself, sustains a disability.  It is of no consequence that the disability policy is provided by or through an employer or another third party such as American Express.  Daugherty's disability insurance policy cannot be categorized as liability insurance for the purposes of § 1332(c)(1) because he, as the insured, is the party entitled to collect the benefits of the policy from Federal, the insurer.  Stated this way, disability insurance and liability insurance are two completely separate forms of insurance, and since § 1332(c)(1) speaks only in terms of "a policy or contract of liability insurance," it is not applicable to and does not cover cases involving disputes between insureds and insurers over disability insurance.  To put it plainly, Daugherty cannot use § 1332(c)(1) to divest this Court of jurisdiction because this statute only applies to disputes involving liability insurance, and disability insurance is not liability insurance.

### III.   KRS § 304.14-370 does not mandate remand to the Circuit Court of Hardin County, Kentucky.

In addition to his arguments under 28 U.S.C. § 1332(c)(1), Daugherty claims that KRS § 304.14-370 requires this Court to remand his case to the Circuit Court of Hardin County, Kentucky.  This statute provides:

> No conditions, stipulations or agreements in a contract of insurance shall deprive the courts of this state of jurisdiction of actions against foreign insurers, or limit the time for commencing actions against such insurers to a period of less than one (1) year from the time when the cause of action accrues.

KRS § 304.14-370.  The Court finds Daugherty's argument under this section unpersuasive and against the weight of controlling law.

Daugherty correctly states that "Kentucky's insurance code specifically precludes an insurance contract from divesting Kentucky state courts of jurisdiction."  DN 169, p. 5, ¶ 19.  There is no disputing that, based on KRS § 304.14-370, it would be contrary to Kentucky law for a foreign insurance company to include a provision in its contract that stated Kentucky courts could not exercise jurisdiction over any dispute arising under the contract.  The operative phrase in KRS § 304.14-370 is, "No condition . . . *in a contract* of insurance shall deprive the courts of this state of jurisdiction of actions against foreign issuers . . . ."  (emphasis added).  In the present case, the Plaintiff has offered no proof that a provision in the disability policy or contract between Federal and Daugherty divested Kentucky courts of jurisdiction.  And even if the contract did contain such a provision, it is unclear how it would prevent *this* Court from hearing the case when it is before the Court based on its diversity jurisdiction.

The Plaintiff appears to read KRS § 304.14-370 to mean that the federal courts have no jurisdiction over disputes arising out insurance contracts sold by foreign insurance companies to Kentucky citizens.  Daugherty claims, "The [Kentucky] legislature specifically reserved these issues to Kentucky courts."  DN 183, p. 6.  This argument is wholly without merit.  First, and foremost, Daugherty reads something into KRS § 304.14-370 that is simply not there.  The statute in no way addresses the jurisdiction of the federal courts to hear a case arising out of a dispute between a foreign insurance provider and a Kentucky citizen.  Second, even if the statute explicitly stated that federal courts have no jurisdiction to hear insurance cases arising under

Kentucky law, such a provision would be unenforceable and nonbinding on this Court. This Court derives its jurisdictional powers from the Constitution and U.S. law. The Court has authority over the present case based on the diversity jurisdiction granted to it by 28 U.S.C. § 1332. Any state law contrary to § 1332 must naturally succumb to the Constitution or U.S. law. As stated in the Supremacy Clause of the Constitution:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2. As such, even if Kentucky had attempted to divest this Court of jurisdiction in KRS § 304.14-370, something that is has *not* done, this provision would be unenforceable because 28 U.S.C. § 1332 is supreme to the laws of Kentucky.

One final possible reading of Plaintiff's argument under KRS § 304.14-370 is that the Court should have abstained from exercising its diversity jurisdiction because "[p]ermitting removal to federal court significantly alters the insurance relationship both substantively and procedurally . . . ." DN 169, p. 5, ¶ 19. This appears to be a public policy argument. The Court also finds it unpersuasive. The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. The Defendants properly called upon the Court to exercise its diversity jurisdiction when they removed the case to federal court pursuant to 28 U.S.C. § 1441. Although the Court and the Circuit Court of Hardin County, Kentucky have concurrent jurisdiction over the case, "[a]bsention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The U.S. Supreme Court has identified a limited number of situations in which it might be appropriate for a district court to decline to exercise jurisdiction. *See id.* 813-17. This case does not present one

of those situations, and the Court is not persuaded by any public policy argument the Plaintiff has made regarding the Court's exercise of jurisdiction.

## CONCLUSION

Plaintiff Daugherty is not pursuing a "direct action against the insurer of a policy or contract of liability insurance" under 28 U.S.C. § 1332(c)(1).  Additionally, he has made no argument under KRS § 304.14-370 that would remove this Court's jurisdiction or persuade it to decline to exercise jurisdiction.  For the foregoing reasons, Plaintiff's motion to remand to the Circuit Court of Hardin County, Kentucky is DENIED.