UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:08-CV-48-R

JOHN DAUGHERTY                                                                                    PLAINTIFF

v.

CHUBB GROUP OF INSURANCE COMPANIES, *et al.*                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Motion to Strike the Defendant's Expert Dr. Thomas Loeb. DN 167. The Defendant has responded. DN 172. The Plaintiff has replied. DN 184. Fully briefed, this matter is now ripe for adjudication. For the following reasons, Plaintiff's motion is DENIED.

## BACKGROUND

Plaintiff John Daugherty ("Daugherty") sued Defendant Federal Insurance Company ("Federal") to recover the benefits of a policy of disability insurance underwritten by Federal. The ultimate issue in this case is whether a slip and fall by Daugherty on February 23, 2003, caused him to experience a "permanent total disability" as defined by the policy. If so, Daugherty should recover a $1.5 million lump sum disability payment from Federal.

"Permanent total disability" is a term specifically defined within the policy. For the purposes of this case, a "permanent total disability" is:

Accidental Bodily Injur[y] that solely and directly causes [Daugherty's]:

Loss of:

Use of . . . Both Feet . . . which solely and directly:

1) prevent[s] [Daugherty] from engaging in any gainful occupation for which [Daugherty] is qualified, or could be qualified, by reason of education, training, experience, or skill; and

1

2) cause[s] a condition which is medically determined by a Physician, approved by the Company, to be of continuous and indefinite duration; and

3) require[s] the continuous care of a Physician, unless [Daugherty] has reached [his] maximum point of recovery.

DN 178-3, p. 5. For Daugherty to have experienced a "permanent total disability," the February 2003 fall must have solely and directly caused him to experience a "loss of use of both feet." As defined by the policy, a loss of use of feet means the "Loss of Use of the foot at or above the ankle joint," and the general phrase "loss of use" means "the permanent and total inability of the specified body part to function, as determined by a Physician." *Id.*

Under the policy, a "physician" is defined as "a person who is licensed as a medical doctor or a doctor of osteopathy under the laws of the jurisdiction in which treatment is given and who is qualified to provide the medical treatment." *Id.* Under these definitions, Daugherty will have a "permanent total disability," and will be entitled to the disability benefits, if a physician determines that the February 2003 fall solely and directly caused his feet to experience a permanent and total inability to function.

Daugherty asserts three arguments as to why the Court should exclude any opinion or testimony offered by Dr. Loeb. First, Daugherty puts forth a deadline argument. He claims that Federal violated the Court's scheduling deadline for disclosing expert witnesses and that the Federal Rules of Civil Procedure mandate exclusion of any expert identified outside of the set timelines. Second, Daugherty arrests a definition argument. He argues that Dr. Loeb must be excluded because his opinion and testimony is made irrelevant by the fact that he does not meet the definition of "physician" under the policy at issue. Finally, Daugherty makes a *Daubert* argument. He asks the Court to take up its role as "gatekeeper" and exclude Dr. Loeb because his testimony fails to overcome the evidentiary hurdles raised by Federal Rule of Evidence 702

and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). As discussed below, the Court will not exclude Dr. Loeb's opinion based on any of these arguments.

## STANDARD

As for the *Daubert* argument, the following standard applies. Federal Rule of Evidence 702 governs the admissibility of expert opinions. The Rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. This rule was amended in 2000 to address the Supreme Court's seminal opinion of *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny, including *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *See* FED. R. EVID. 702 (advisory committee notes). To determine an opinion's reliability, a court can look at factors "such as testing, peer review, error rates, and 'acceptability' in the relevant scientific community[.]" *Kumho Tires*, 526 U.S. at 141.

"As a gatekeeper, the trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Rose v. Truck Centers, Inc.*, 388 Fed. Appx. 528, 533 (6th Cir. 2010) (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007)); *see Daubert*, 509 U.S. at 589. The trial judge must assess "whether the reasoning of methodology underlying the testimony is scientifically valid and [ ] whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. Expert testimony has been properly excluded by other trial courts where "the expert has unjustifiably extrapolated from an accepted premise to an

3

unfounded conclusion." FED. R. EVID. 702 (advisory committee notes).

Notwithstanding the role as gatekeeper, a trial judge is not the court's "armed guard." *Ruiz-Troche v. Pepsi Cola of P.R.*, 161 F.3d 77, 86 (1st Cir. 1998). "[T]he rejection of expert testimony [under *Daubert*] is the exception rather than the rule." FED. R. EVID. 702 (advisory committee notes). The expert's proponent needs only to show by a "preponderance of the evidence that the expert's reasoning and methodology is scientifically valid." CHARLES WRIGHT & VICTOR GOLD, 29 FED. PRAC. & PROC. EVID. § 6266 at 276 (1997) (citation omitted). Once the court is satisfied this standard has been met, the expert's testimony "should be tested by the adversary process - competing expert testimony and active cross-examination - rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Ruiz*, 161 F.3d at 85 (citing *Daubert*, 509 U.S. at 590).

Finally, a trial court is not required to hold a *Daubert* hearing so long as it assesses the relevance and reliability of the expert's testimony. *See United States v. Smithers*, 212 F.3d 306, 324 (6th Cir. 2000); *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

## DISCUSSION

Daugherty moves this Court to exclude the expert opinion of Dr. Thomas Loeb on three grounds: 1) evidentiary deadlines, 2) policy definitions, and 3) *Daubert* analysis. The Court will address each of these arguments in turn.

### A. The Deadline Argument - Any Violation of the Scheduling Order by Federal was not Prejudicial to Daugherty.

Daugherty first moves the Court to exclude Dr. Loeb because Federal failed to identify its expert witness prior to the deadline for expert disclosure set by the Court. The Court is not persuaded by Daugherty's argument because any expert disclosure after the deadline was not prejudicial to Daugherty.

4

Under the Federal Rules of Civil Procedure, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 703." FED. R. CIV. P. 26(a)(2)(A). A party planning to use an expert witness "must make these disclosures at the times and in the sequence that the court orders." FED. R. CIV. R. 26(a)(2)(C). "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The discovery and dispositive motions deadlines have been amended numerous times since the case was removed to this Court in January 2008. Daugherty points to the schedule set by the Order of September 18, 2009, as establishing the final deadlines for identifying experts as required by Rule 26(a)(2). DN 44. The order required Daugherty to disclose his experts by October 2, 2009, required Federal's disclosure of experts by November 2, 2009, and required disclosure of rebuttal experts by December 2, 2009. *Id.* Thus, Daugherty's position is that the Court should apply the sanction of Rule 37(c)(1) and prohibit Federal from using Dr. Loeb's opinion because it was not disclosed on or before November 2, 2009.

The Court finds that any disclosure of Federal's experts after this date was harmless and declines to apply the Rule 37(c)(1) sanction requested by Daugherty. "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 *unless the violation was harmless or is substantially justified*." *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (emphasis added) (quotation omitted). The burden to prove harmlessness is on the potentially sanctioned party. *Id.* (citation omitted).

In response to Daugherty's motion, Federal argues that changes in the discovery schedule

have made any failure to disclose harmless. After deposing Daugherty's expert witness, Dr. Craig Roberts, on December 9, 2010, Federal moved to strike new opinions offered by Dr. Roberts during the deposition which differed from his expert report. DN 133. On March 23, 2011, the Court denied Federal's motion to strike and instead ordered Daugherty to make his expert available for a second deposition to address any differences between the opinions offered in his report and his first deposition. DN 154. The expert was to be made available within 30 days of the order. *Id.* Because of scheduling conflicts between the parties and Daugherty's expert, Dr. Roberts was not deposed for a second time until July 14, 2011. DN 163. The Court readily granted Daugherty's request for extensions of time to make Dr. Roberts available for a second deposition. DN 157. The Court also contemplated Federal's disclosure of expert witnesses in a June 14, 2011, telephonic conference to which all parties were present. Daugherty raised no objections at that time, and on July 1, 2011, Federal disclosed Dr. Loeb as its expert pursuant to Rule 26(a)(2). DN 170-28, p. 2.

In further support of harmlessness, Federal points out that Daugherty served a subpoena on its expert, Dr. Thomas Loeb, on July 15, 2011, the day after Daugherty's expert was deposed for a second time. DN 165. The subpoena was for any expert report or opinions created by Dr. Loeb and for any documents used in forming those opinions. Dr. Loeb complied with the subpoena and produced the requested documents to Daugherty. As a result, Daugherty has been in possession of Dr. Loeb's opinion and report for more than three months and cannot claim surprise or deception by Federal regarding those opinions. "[W]hile the motive or culpability of the party that failed to make the disclosure may have some bearing on a determination of harmlessness, the more significant factor is whether the omission caused other parties to suffer prejudice . . . . 7-37 MOORE'S FEDERAL PRACTICE § 37.63 (Matthew Bender 3d Ed.). The Court

finds that Federal did not act with any sanctionable culpability in disclosing its expert and that Daugherty has not been prejudiced by Federal's delay in disclosing experts. Because Federal's actions were harmless and non-prejudicial to Daugherty, the Court declines to apply the sanction of Rule 37(c)(1).

### B. The Definition Argument - Dr. Loeb is a "Physician" as Defined by the Policy.

Daugherty's second argument in favor of exclusion is that Dr. Loeb's opinion is not relevant because Dr. Loeb is not a "physician" as defined by the disability policy at issue in this case. According to Daugherty, "only a person licensed as a medical doctor (or doctor of osteopathy) in the Commonwealth of Kentucky *and* who provides treatment (meaning an examination of some sort of the insured) can render a finding of 'Loss of Use.'" DN 167, p. 9 (emphasis original). The Court finds this argument unconvincing because a close reading of the policy's definitions clearly shows that Dr. Loeb is a "physician" within the terms of the policy.

The disability insurance policy plainly defines "physician" as "a person who is licensed as a medical doctor or a doctor of osteopathy under the laws of the jurisdiction in which treatment is given and who is qualified to provide the medical treatment." DN 178-3, p. 5. To be a "physician" for the purposes of the policy, an individual must 1) be licensed as a doctor in Kentucky, and 2) be qualified to provide medical treatment. Daugherty argues that Dr. Loeb cannot qualify as a "physician" under the policy because he did not conduct a physical, in-person examination of or provide any treatment to Daugherty. This argument is contrary to the plain terms of the contract. *See Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002) ("Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written.").

The fact that Dr. Loeb did not examine or treat Daugherty does not excluded him from

7

the definition of "physician" in the policy. There is no requirement in the definition of "physician" that a doctor actually exam or treat the insured. The doctor must simply be licensed in the state where treatment took place and be qualified to provide treatment. *See* DN 178-3, p. 5 (definition of "physician"). Dr. Loeb's résumé - attached to his expert report - shows that he is licensed as a medical doctor in Kentucky and specializes in orthopedic surgery. DN 170-28, pp. 10-11. Dr. Loeb is clearly licensed in the jurisdiction where Daugherty received treatment, and the Court finds that a specialty in orthopedic surgery is more than sufficient to qualify Dr. Loeb to provide treatment in this case. That Dr. Loeb did not provide treatment to or examine Daugherty is inconsequential for the definition of "physician" under the policy. For these reasons, Daugherty's definitional argument fails, and the Court will not find that Dr. Loeb's opinion is irrelevant because he is not a "physician" under the policy.

### C. The *Daubert* Argument.

Daugherty's final argument in favor of excluding Dr. Loeb is that his opinion cannot overcome the evidentiary hurdles presented by Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert*. Daugherty urges the Court to take up its role as "gatekeeper" and exclude Dr. Loeb's opinion because it is neither relevant nor reliable. In reviewing Daugherty's argument under *Daubert*, the Court is cognizant that "the rejection of expert testimony [under *Daubert*] is the exception rather than the rule." FED. R. EVID. 702 (advisory committee notes).

A trial judge considering a *Daubert* motion to exclude expert testimony must conduct a two-step analysis. The judge must "assess the relevance and the reliability of the expert's testimony. The relevance requirement ensures that there is a 'fit' between the testimony and the issue to be resolved by the trial. The reliability requirement is designed to focus on the methodology and principles underlying the testimony." *Greenwell v. Boatwright*, 184 F.3d 492,

496-97 (6th Cir. 1999) (citations omitted). In asking the Court to exclude Dr. Loeb's opinion, Daugherty makes what the Court characterizes as one relevancy argument, four reliability arguments, and one bias argument. The Court will address each of these categories of arguments in turn.

**1. The Relevance of Dr. Loeb's Opinion.**

For the purposes of a *Daubert* motion to exclude, the Court must assess the relevance of the opinion the expert wishes to offer. "The 'relevance' requirement stems from Rule 702's requirement that the testimony assist the trier of fact to understand the evidence or to determine a fact in issue. Thus, there must be a 'fit' between the inquiry in the case and the testimony, and expert testimony that does not relate to any issue in the case is not relevant and therefore not helpful." *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993) (citation omitted).

According to Daugherty, Dr. Loeb's opinion is not relevant because Dr. Loeb offered no opinion on a pertinent issue in this case, whether or not Daugherty experienced a "loss of use" of his feet. Daugherty's argument as to whether Dr. Loeb's opinion is relevant seeks to strictly and narrowly construe Dr. Loeb's opinion based on the words or phrases he did or did not use in his report. Daugherty's construction of the relevant issue is entirely too narrow and without merit and will not exclude Dr. Loeb's opinion. While it is true that whether or not Daugherty experienced a "loss of use" is important in this case, it is only important in the context of a "permanent total disability." To be entitled to the benefits of the disability policy at issue, Daugherty must show that he experienced a "permanent total disability," which is defined as:

Accidental Bodily Injur[y] that solely and directly causes [Daugherty's]:

Loss of:

Use of . . . Both Feet . . . which solely and directly:

1) prevent[s] [Daugherty] from engaging in any gainful occupation for which [Daugherty] is qualified, or could be qualified, by reason of education, training, experience, or skill; and

2) cause[s] a condition which is medically determined by a Physician, approved by the Company, to be of continuous and indefinite duration; and

3) require[s] the continuous care of a Physician, unless [Daugherty] has reached [his] maximum point of recovery.

In the summary portion of his expert report, Dr. Loeb concludes that any disability experience by Daugherty is the "natural course" one would expect as the result of the types and history of Daugherty's medical problems. DN 170-28, p. 8. Thus, although Dr. Loeb does not expressly use the words "loss of use" it is clear that he is opining that any "permanent total disability" Daugherty experiences is the result of his other medical conditions, not the February 23, 2003, fall. There can be no genuine argument that this opinion does not "fit" the relevant issues in this case. The Court is not persuaded by Daugherty's arguments that Dr. Loeb's opinion is irrelevant. Because Dr. Loeb's opinion addresses whether the February 2003 fall or some other factor rendered Daugherty disabled under the policy, the Court finds that his opinion is relevant for the purposes of Rule 702.

### 2. The Reliability of Dr. Loeb's Opinion.

Daugherty's next argument against admissibility is that Dr. Loeb's opinion is not reliable. Daugherty asserts four different arguments to bolster his position. First he claims that Dr. Loeb's opinion is flawed because it merely offers conclusions. Second, Daugherty finds that the opinion is unreliable because it would not aid the trier of fact in making the final factual determination. Next, Daugherty argues the opinion is unreliable because it does not identify the specific medical records Dr. Loeb relied upon when forming his opinion. Finally, Daugherty attacks the reliability of the opinion based on the methodology used by Dr. Loeb. The Court

declines to address these arguments individually because, at bottom, Daugherty objections to Dr. Loeb's opinion under *Daubert*'s reliability prong are based on the methodology used in forming that opinion. Relying on the Sixth Circuit's opinion in *Best v. Lowe's Home Center, Inc.*, 563 F.3d 171 (6th Cir. 2009), Daugherty argues that Dr. Loeb's opinion is not reliable because "Federal must demonstrate that Dr. Loeb arrived at his conclusions by employing a known and accepted methodology - 'differential diagnosis.'" DN 184, p. 7.[1]

After addressing the relevance of an expert's opinion, a district court conducting a *Daubert* analysis must examine the expert's reliability and "must consider 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Best*, 563 F.3d at 176 (quoting *Daubert*, 509 U.S. at 592-93). "*Daubert* attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other. There is no definitive checklist or test for striking this balance . . . ." *Id.* at 176-77. The *Best* Court recognized "differential diagnosis as an appropriate method for making a determination of causation for an individual instance of disease." *Id.* at 178 (citation omitted). Although differential diagnosis is a recognized and appropriate method, the *Best* Court did not say is was the *only* method, and went so far as to point out that "not every opinion that is reach via a differential-diagnosis method will meet the standard of reliability required by *Daubert*." *Id.* (citations omitted). Thus, contrary to Daugherty's argument, the *Best* opinion does not stand for the proposition that a doctor offering an opinion as to causation *must* use a differential diagnosis in forming that opinion. *Best* merely established the rules and

---

[1] Although it not given any weight in consideration of the present motion, the Court points out that it reviewed the expert report provided by Daugherty's expert, Dr. Craig Roberts. There is no indication that the rigorous differential diagnosis that Daugherty argues should be present in Dr. Loeb's report was used by or is present in Dr. Roberts's report. The Court finds no evidence that Dr. Roberts followed the methodology that Daugherty claims Dr. Loeb should have followed in forming his opinion. Absent the fact that Dr. Roberts performed an in-person examination of Daugherty, the competing reports appear to have be created in a similar manner and with a similar purpose, supporting the causation arguments presented by their relative sides.

11

principles that must be present in a differential diagnosis for it to comply with Federal Rule of Evidence 702. *See id.* at 179. The *Best* Court did not hold that differential diagnosis is the only method doctors could use when forming causation opinions.

The Court has reviewed the expert report prepared by Dr. Loeb and finds no indication that it is unreliable in violation of FRE 702. Although Dr. Loeb never performed an in-person examination of Daugherty, he clearly reviewed the medical records presented to him for indications that the February 2003 fall caused Daugherty to experience the disability of which he complains. After reviewing the records, Dr. Loeb concluded to a "reasonable medical probability" that the "natural course" of Daugherty's pre-existing conditions, not the February 2003 fall, was responsible for his disability. The Court can find no indicia of unreliability that would warrant exclusion of Dr. Loeb's opinion. Even though the Court finds the opinion to be reliable so as to overcome the hurdles of FRE 702, the Court offers no assessment of the opinion's credibility. If, as Daugherty asserts, the opinion is underdeveloped and based only on limited portions of Daugherty's medical records, these discrepancies should be highlighted on cross-examination. Any problems in Dr. Loeb's opinion go to its credibility - something to be considered by the jury - not its reliability. *See Ruiz-Troche v. Pepsi Cola of P.R.*, 161 F.3d 77, 85 (1st Cir. 1998) (explaining that once reliability has been satisfied the expert's testimony "should be tested by the adversary process - competing expert testimony and active cross-examination" rather than being excluded). Daugherty's arguments regarding the reliability of Dr. Loeb's opinion are unpersuasive, and the Court will not use its role as "gatekeeper" to exclude Dr. Loeb's opinion.

### 3. The Financial Bias of Dr. Loeb's Opinion.

As a final argument, Daugherty asks the Court to exclude Dr. Loeb's opinion because its

reliability is undermined by Dr. Loeb's financial bias. According to the Sixth Circuit, a "quintessential expert for hire" should "not be accorded a presumption of *un*reliability, but the party proffering the expert must show some objective proof . . . supporting the reliability of the expert's testimony." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 435 (6th Cir. 2006) (emphasis original) (citation omitted). There is no question that Dr. Loeb is being compensated for his report and opinion in this case. His compensation schedule is directly attached his report. DN 170-28, p. 31. The Court does not find that this fact overrides the indications of reliability considered above. Dr. Loeb is not in a unique position and is not the first expert to be compensated in this case. In fact, the experts offered by both sides are to be compensated for their reports, opinions, and any testimony they offer at a trial on the issues. The amount and type of compensation these witnesses receive does not render their opinions inherently unreliable. While the compensation they receive may bias their opinions, bias can be presented at trial and is a measure of credibility to be considered by the jury, not a means by which the Court can exclude. The Court has previously found Dr. Loeb to be a reliable witness and will not exclude his opinion as unreliable simply because he is compensated for that opinion. Daugherty may present evidence of Dr. Loeb's bias at trial, but this bias does not render his opinion wholly unreliable or warrant exclusion.

## CONCLUSION

Plaintiff John Daugherty has moved to strike the expert opinion of Dr. Thomas Loeb offered by Defendant Federal Insurance Company. For the foregoing reasons Daugherty's motion is DENIED.