# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION
### CASE NO. 3:08-CV-00048-R

JOHN DAUGHERTY                                                              PLAINTIFF

v.

CHUBB GROUP OF INSURANCE COMPANIES, *et al.*                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the parties' motions for summary judgment.

Defendant Federal Insurance Company initially moved for summary judgment.  DN 166.

Plaintiff John Daugherty responded and filed his cross motion for summary judgment.  DN 178.

The Defendant replied to its own motion and responded to the Plaintiff's.  DN 185.  Finally, the

Plaintiff has replied to his cross motion.  DN 206.  Fully briefed, this matter is now ripe for

adjudication.  For the following reasons, both Plaintiff's and Defendant's motions are DENIED.

## BACKGROUND

The ultimate issue in this case is whether the Plaintiff, John Daugherty ("Daugherty"), is

entitled to receive benefits from a policy of disability insurance.  In 2001, Daugherty purchased

the "Accidental Permanent Total Disability Benefit" insurance policy through American

Express.  The policy was underwritten by the Defendant, Federal Insurance Company

("Federal"), and became effective on November 1, 2001.  The policy is designed to pay the

insured a $1.5 million lump sum payment if he experiences a "permanent total disability" as

defined by the policy.

Daugherty alleges that a fall on February 23, 2003, caused him to lose the functional use

of his feet, an event that would constitute a "permanent total disability" under the terms of the

policy and entitle him to the disability payment.  On that date, Daugherty, who is an electrician

by training, was working on a job site in LaRue County, Kentucky.  As he was leaving the job site, Daugherty slipped and fell on an icy driveway.  He did not require immediate medical treatment and drove himself home shortly after the fall.  Daugherty claims that this fall caused him to become disabled within the terms of the policy.

On May 1, 2004, more than a year after the accident, Daugherty filed a claim for disability benefits with Federal.  Federal denied Daugherty's claim in a November 22, 2004 letter.  Federal based its denial on a review of Daugherty's medical history and records and concluded the review "appears to confirm that after this claimed fall, [Daugherty's] physical and medical condition remained relatively unchanged."  In other words, Federal did not find that Daugherty had experienced a permanent total disability as a result of the fall.  Daugherty ultimately sued Federal on December 27, 2007 to collect the benefits of the policy, and Federal removed to this Court based on diversity on January 17, 2008.

Daugherty alleges that the fall caused him to experience a "permanent total disability" of his feet, which would entitle him to receive the benefits of the policy.  For the purposes of this case, the policy defines the "permanent total disability" of Daugherty's feet as:

Accidental Bodily Injur[y] that solely and directly causes [Daugherty's]:

Loss of:

Use of . . . Both Feet . . . which solely and directly:

1) prevent[s] [Daugherty] from engaging in any gainful occupation for which [Daugherty] is qualified, or could be qualified, by reason of education, training, experience, or skill; and

2) cause[s] a condition which is medically determined by a Physician, approved by the Company, to be of continuous and indefinite duration; and

3) require[s] the continuous care of a Physician, unless [Daugherty] has reached [his] maximum point of recovery.

Federal asserts at least three reasons that Daugherty does not fall within this definition. First, Federal presents evidence that Daugherty has not lost the functional use of his feet because he can still drive and can also walk with the aid of two canes. Second, Federal argues that Daugherty's fall did not "solely and directly" cause him to lose use of his feet. This position is supported by the expert witness opinion of Dr. Thomas Loeb, who found that Daugherty's long history of pre-existing conditions, not the February 2003 fall, caused Daugherty's disability. Finally, Federal denied Daugherty's claim because the fall did not prevent him from seeking "gainful occupation." As support for this position, Federal presents evidence that Daugherty worked in his occupation as an electrician after the February 2003 fall and that he made statements to his treating medical personnel that he was ready to return to work at various points after the fall.

Daugherty counters Federal's positions on numerous grounds. Most importantly, Daugherty presents the opinions of his treating physicians, as well those of his expert, Dr. Craig Roberts, that the February 2003 fall: solely and directly cause his disability; prevented him from returning to work in any functional capacity and as nothing more than a "figurehead;" and caused a disability of an indefinite duration. Additionally, the physicians claim that Daugherty will need continuous care and/or has reached his maximum point of recovery. In all, Daugherty argues that the evidence presented shows he falls squarely within the definition of permanent total disability and should be awarded benefits under the policy.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. C𝗂ᴠ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The parties have filed competing motions for summary judgment. Based on the parties' briefs, the substance of this case can be distilled to two issues. First, whether the Plaintiff's claims should be dismissed because they are time-barred by the limitation provision in the

disability policy. Second, whether the Plaintiff experienced a "permanent total disability," as that term is defined, which would entitle him to receive the benefits of the policy. Each of these issues will be addressed by the Court. Because each issue requires the Court to interpret the provisions of the policy in this case, the Court begins its analysis by reviewing the rules Kentucky courts use to interpret insurance policies. The Court will then apply these rules to the issues outlined above.

## I.     Rules of Interpretation Applied to Kentucky Insurance Policies.

The Court has jurisdiction to hear this case because the parties are completely diverse. *See* 28 U.S.C. § 1332. When sitting in diversity, federal district courts are required to apply the substantive law of the states in which they sit. *See Erie Railroad v. Tompkins*, 304 U.S. 64 (1938). The present case involves the interpretation of a contract of insurance, and the interpretation of contracts is a matter of state law. *See Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). Accordingly, the Court will apply the rules Kentucky courts use to interpret and give meaning to insurance policies in Kentucky.

The first rule of interpretation is that "[a] policy of insurance is to be construed liberally in favor of the insured . . . ." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). The second rule is that where the terms of the policy are not ambiguous, their ordinary meaning will govern. *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) ("[W]here not ambiguous, the ordinary meaning of the words chosen by the insurer is to be followed.") (citing *Washington Nat'l Ins. Co. v. Burke*, 258 S.W.2d 709 (Ky. 1953)). "[A]n insurance contract must be construed without disregarding or inserting words or clauses and seeming contradictions should be harmonized if reasonably possible." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869,

875-76 (Ky. 2002) (quotation omitted). "[I]n the absence of ambiguities . . . the terms of an insurance policy will be enforced as drawn." *Hendrix v. Fireman's Fund Ins. Co.*, 823 S.W.2d 937 (Ky. App. 1991) (citations omitted). Unless the terms in the contract have acquired a technical meaning, they "must be interpreted according to the usage of the average man . . . ." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky. 1986). "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Heaven Hill Distilleries, Inc.*, 82 S.W.3d at 873 (Ky. 2002) (citing *Am. Nat'l Bank & Trust Co. v. Hartford Accident & Indem. Co.*, 442 F.2d 995, 999 (6th Cir. 1971)).

The third rule of interpretation is that the Court cannot apply the "ordinary meaning" of the terms if they are ambiguous. "An insurance policy is ambiguous only when the provision to be construed is reasonably susceptible of more than one meaning." *Foster v. Ky. Hous. Corp.*, 850 F.Supp. 558, 561 (E.D. Ky. 1994) (citation omitted). If an ambiguous term or provision is subject to two potential interpretations, "one favorable to the insured and the other favorable to the insurer, the former will be adopted." *Powell-Walton-Milward, Inc.*, 870 S.W.2d at 227 (citing *Koch v. Ocean Accident & Guar. Corp.*, 230 S.W.2d 893 (Ky. 1950)). The prevailing rule is that "uncertainties and ambiguities must be resolved in favor of the insured." *Fryman*, 704 S.W.2d at 206 (citing *Donohue v. Washington Nat'l Ins. Co.*, 82 S.W.2d 780 (Ky. 1935)).

If the Court finds that the provisions or terms in the disability policy at issue are ambiguous, the Court will resolve the ambiguity by applying the "reasonable expectations doctrine." "Only actual ambiguities, not fanciful ones, will trigger application of the doctrine." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). "Under the 'doctrine of reasonable expectations,' an insured is entitled to all the coverage he may reasonably expect to be provided according to the terms of the policy." *Hendrix*, 823 S.W.2d at 938 (citing *Woodson v.*

*Manhattan Life Ins. Co.*, 743 S.W.2d 835, 839 (Ky. 1987)). "The reasonable expectations doctrine is based on the premise that policy language will be construed as laymen would understand it. . . . [T]he ambiguous terms should be interpreted in favor of the insured's reasonable expectations." *True*, 99 S.W.3d at 443.

In summary, the Court is tasked with interpreting the provisions of the disability insurance policy at issue and will construe the terms liberally in favor of the insured. When reviewing the policy, the Court will first apply the ordinary meaning of the terms. If the terms are not ambiguous, they will be enforced as written. The Court will find the terms to be ambiguous if they are susceptible to two different meanings or interpretations. When interpreting ambiguous terms, the Court will apply the reasonable expectations doctrine and will read into the ambiguity all that the insured could reasonably expect to receive under the policy.

## II. Plaintiff's Suit is not Time-Barred because the Policy is Ambiguous as to the Limitations Issue.

Federal's first argument in favor of summary judgment is procedural in nature. According to Federal, the explicit terms of the disability policy bar Daugherty's claims because he did not file them within the period prescribed by the policy. Daugherty responds to this argument on a number of grounds, namely that the time limits are ambiguous and that he timely filed his claim. The Court finds that the limitations provision is ambiguous and subject to a number of potential interpretations when read in conjunction with the policy's other provisions. As a result, Daugherty's claim is not time-barred.

As an initial matter, Kentucky has a fifteen-year statute of limitations for causes of action accruing on a written contract, including insurance policies. *See* KRS § 413.090. Although this is the statutory rule, Kentucky courts will enforce a contractually provided limitations period that is shorter than the statutory period. *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 404 (6th Cir. 2005)

("Contract provisions limiting the time within which an insured may sue are generally valid under Kentucky law."); *Edmondson v. Penn. Nat'l Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 756 (Ky. 1989) ("We have previously recognized the validity of insurance contract provisions requiring as a condition to sue that the action must commenced within the time specified by the policy.") (citations omitted); *see Stansbury v. Smith*, 424 S.W.2d 571, 572 (Ky. 1968) ("[T]he action was not commenced within the time specified by the policy-contract, and is therefore barred.").

The disability policy before the Court contains a three-year limitations clause. Under the heading "Legal Action Against Us," the policy states in pertinent part:

> No [legal action to recover on the policy] may be brought after three (3) years from the time complete, written Proof of Loss is required to be given.

DN 178-3, p. 8. If the Court followed Federal's interpretation of this clause, Daugherty's suit would be time-barred. In order to understand Federal's application of this provision, and the Court's reasons for rejecting it, the Court must examine how this limitations provision works in conjunction with the entire policy and in the context of this case.

As stated above, Daugherty claims that he was rendered totally and permanently disabled as the result of a fall he sustained on February 23, 2003. Assuming that Daugherty was rendered disabled within the terms of the policy, he was required to wait the length of the "Elimination Period" before disability benefits accrued under the policy. The Elimination Period is the "number of days of the Primary Insured Person's Permanent Total Disability that must elapse before Permanent Total Disability benefits become payable." *Id.* at p. 4. For this particular policy, the Elimination Period was 365 days. *Id.* at 2. Thus, the earliest date that disability benefits accrued to Daugherty was February 23, 2004, one year after the date of Daugherty's disability-causing accident.

Simply because benefits have accrued under the policy does not mean that they will

automatically be paid.  The policy required Daugherty to file a "Proof of Loss" before Federal

would pay benefits.  Under the heading "Claim Proof of Loss," the policy states:

> For claims involving disability, written Proof of Loss must be given to us within thirty (30) days after commencement of the period for which we are liable. Subsequent written proof of the continuance of such disability must be given to us at such intervals as we may reasonably require.
>
> Failure to give written Proof of Loss within these timeframes will not invalidate any claim if notice is given as soon as reasonably possible, and in no event . . . later than one (1) year after the deadline to submit written Proof of Loss.

*Id.* at p. 7.  As already established, the Elimination Period ended on February 23, 2004, and

benefits under the policy accrued on that date.  Such benefits would only be paid, however, after

Daugherty filed a "written Proof of Loss" as required by the paragraph excerpted above.  Federal

became liable to Daugherty for the disability benefits on February 23, 2004, and Daugherty was

required to file his claim by March 24, 2004.  If he failed to file by March 24, 2004, the second

paragraph under "Claim Proof of Loss" allowed him to file within "one (1) year after the

deadline to submit written Proof of Loss."  *Id.*  The deadline to file written proof of loss was

March 24, 2004, and one year from this date would have been March 24, 2005.  Thus, under the

terms of the policy, Daugherty was required to file his written proof of loss no later than March

24, 2005.

Daugherty filled out a "written Proof of Loss" on April 8, 2004, and sent it to Federal on

May 1, 2004.  DN 170-4.  Although Daugherty did not file within the initial thirty-day period, he

filed his proof of loss before March 24, 2005, which was still within the allowable claim period.

Federal rejected Daugherty's claim on November 22, 2004.  DN 170-14.  After the rejection in

2004, Daugherty filed his lawsuit against Federal on December 27, 2007.  DN 1-3, p. 14.

Because of the numerous dates presented, the Court finds it necessary to highlight and

list the dates discussed thus far.  Such dates include:

- February 23, 2003:       Alleged date of accident and Daugherty's onset of total permanent disability

- February 23, 2004:       End of Elimination Period and date on which benefits accrued to Daugherty under the policy

- March 24, 2004:          End of thirty-day period in which Daugherty was required to file a written proof of loss

- April 8, 2004:           Date Daugherty filled out his written proof of loss

- May 1, 2004:             Date Federal received Daugherty's written proof of loss

- November 22, 2004:       Date Federal denied Daugherty's claim

- March 24, 2005:          End of the one year period in which Daugherty could file written proof of loss if he failed to do so within the first thirty-day period (March 24, 2004)

- December 27, 2007:       Date that Daugherty filed his lawsuit against Federal to recover benefits under the policy

Federal claims that Daugherty's lawsuit, filed on December 27, 2007, is time-barred because it was filed more than three years after Federal was given proof of loss. Daugherty's written proof of loss was received by Federal on May 1, 2004. Federal urges the Court to use this date when applying the three-year limitations period. Three years from May 1, 2004, is May 1, 2007. Because Daugherty filed after this date, Federal claims he is time-barred from bringing suit. Federal is willing to concede November 22, 2004, the date Federal rejected Daugherty's claim, as the day on which the three-year limitation period began to run. Applying this date, however, would have required Daugherty to file suit by November 22, 2007, and his actual filing date was still more than a month later. If the Court were to adopt either of Federal's positions, the limitations period contained in the disability insurance policy would bar Daugherty's lawsuit.

Federal's application of the three-year limitations provision to the facts and dates of this case is initially persuasive. The Court declines to adopt Federal's position, however, because of

ambiguities that arise when the "Claim Proof of Loss" paragraph and the "Legal Action Against Us" paragraph (hereinafter referred to as the "Claim" paragraph and the "Limitations" paragraph respectively) are read together.  In order to point out the ambiguities in these paragraphs, the Court excerpts them again and highlights the relevant differences.

### Claim Proof of Loss ("Claim" Paragraph)

For claims involving disability, *written Proof of Loss* must be given to us within thirty (30) days after commencement of the period for which we are liable. Subsequent written proof of the continuance of such disability must be given to us at such intervals as we may reasonably require.

Failure to give *written Proof of Loss* within these timeframes will not invalidate any claim if notice is given as soon as reasonably possible, and in no event . . . later than one (1) year after the deadline to submit *written Proof of Loss*.

### Legal Action Against Us ("Limitations" Paragraph)

No [legal action to recover on the policy] may be brought after three (3) years from the time *complete, written Proof of Loss* is required to be given.

DN 178-3, pp. 7, 8 (emphasis added).  The Claim paragraph directs an insured to file *written Proof of Loss* with Federal when Federal becomes liable on an insured's disability claim.  The Limitations paragraph provides no legal action may be brought after three (3) years from the time *complete, written Proof of Loss* is required to be given.  To be clear, the difference between these two paragraphs that the Court wishes to highlight is the use of the word "complete" in the Limitations paragraph and its absence from the Claim paragraph.

Federal would have the Court read "complete, written Proof of Loss" to be equal to and have the same meaning as "written Proof of Loss."  If these phrases are identical in meaning, then Federal's limitations argument would be strong.  Federal's disability insurance policy does not define "Proof of Loss," "written Proof of Loss," or "complete, written Proof of Loss." Because the terms are not defined and because significance must be read into the use or absence

of the word "complete," the Court finds these terms ambiguous when the paragraphs are read in conjunction with one another. *Heaven Hill Distilleries, Inc.*, 82 S.W.3d at 875-76 ("[A]n insurance contract must be construed without disregarding or inserting words or clauses and seeming contradictions should be harmonized if reasonably possible."). Because the policy is ambiguous, the limitations period can be applied in a number of different ways.

Both parties agree that Daugherty filed a "written Proof of Loss" with Federal on May 1, 2004. What they cannot agree on, however, is whether and when this proof of loss served as a "complete, written Proof of Loss," which would cause the limitations period to run. Federal claims the May 1, 2004, filing served as a "complete, written Proof of Loss," and Daugherty argues otherwise.[1] Because of the difference between the Claim paragraph and the Limitations paragraph, the Court cannot agree with Federal.

The Court finds that the phrase "complete, written Proof of Loss" is susceptible to at least two different interpretations. The adjective "complete," as used in the Limitations paragraph, modifies the phrase "written Proof of Loss" and must be given meaning in the policy. The word "complete" is defined as "possessing all necessary parts . . . not lacking anything;" something "brought to an end or to a final or intended condition;" something "fully realized." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 465 (1993).

With this definition in mind, the first possible interpretation of "complete" is that Daugherty's "written Proof of Loss" was converted into a "complete, written Proof of Loss" on March 24, 2005, the end of the period in which Daugherty could file a claim. Under this

---

[1] Daugherty argues that the term "complete, written Proof of Loss" contemplates notice sent from Federal to Daugherty that his claim was complete. The Court easily rejects this position because the Limitations paragraph speaks of "complete, written Proof of Loss" as something that "we [Federal] have been given." There is no indication that a "complete, written Proof of Loss" is a response from Federal to Daugherty. In fact, just the opposite is demanded by the paragraph. Daugherty is required to give "complete, written Proof of Loss" to Federal under the Limitations paragraph.

interpretation his claim was "complete" because it was "brought to an end" on that date. If converted to a "complete, written Proof of Loss" on March 24, 2005, the limitations period would run to March 24, 2008, and Daugherty's suit could not be time-barred because it was filed prior to the end of the limitations period.

As established above, benefits accrued to Daugherty at the end of the Elimination Period on February 23, 2004. From that date, he was required to file a "written Proof of Loss" within thirty days, which was March 24, 2004. The record shows that Daugherty did not file by that date. Failure to file did not eliminate his claim, however, because the Claim paragraph allowed him to file a "written proof of loss" no "later than one (1) year from the deadline to submit written Proof of Loss." The deadline for "written Proof of Loss" was March 24, 2004, and an additional one year would have ended the claims period on March 24, 2005. After March 24, 2005, Daugherty could file no additional proof of loss, and his claim would have been "complete" because the claim period would have closed. Once converted to a "complete, written Proof of Loss," the limitations period would have been triggered, and Daugherty would have been required to bring any lawsuit against Federal within three years, or by March 24, 2008. Under this interpretation, Daugherty cannot be time-barred because he filed his complaint on December 27, 2007, three months before the end of the limitations period.

The second possible interpretation of "complete" is that the Limitations period has never run because Daugherty never filed a "complete, written Proof of Loss." Under this interpretation, "written Proof of Loss" and "complete, written Proof of Loss" are two wholly separate items to be filed independently with Federal. As described above, "complete" can also be defined as "possessing all necessary parts . . . not lacking anything." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 465 (1993). Thus, a "complete, written Proof of Loss" requires the

addition of information or some other factor not present in a "written Proof of Loss." The proof cannot be made "complete" until the insured files this additional information with Federal. Until an insured files a "complete, written Proof of Loss," the limitations period cannot run.

Applying this interpretation of "complete," the disability policy requires two separate proofs of loss, a Claim "written proof" and a Limitations "complete, written proof." Interpreted this way, these proofs serve different purposes. The Claim "written proof" notifies Federal of its pending liability to the insured. The Limitations "complete, written proof" signals the beginning of the limitations period. Until the Limitations "complete, written proof" is submitted to Federal, the three-year limitations period cannot run. The limitations period is not triggered by a Claim "written proof" because it is filed for a different purpose than a Limitations "complete, written proof." Because these proofs of loss are filed for different purposes and use different terms, they cannot have the same meaning under the policy. For the purposes of this interpretation, there is no indication that Daugherty ever filed a "complete, written proof" with Federal, and the Limitations period never ran. Again, Daugherty's claim is not time-barred.

In addition to the two competing interpretations described, there is evidence that Federal waived its right to assert a defense under the Limitations paragraph. In her Rule 30(b)(6) deposition, Donna Herron, a claims representative for Federal, testified that she was competent to testify to all the facts regarding Federal's affirmative defenses. DN 178-6, p. 12. Ms. Herron was specifically questioned about any affirmative defense Federal might have based on the limitations period and answered that there was no limitations period.

| **Plaintiff's Counsel:** | Do you see Line 210 [of Federal's Second Amended Complaint] that says, Plaintiff's claims are barred by the limitations period contained in the plan? |
|---|---|
| **Ms. Herron:** | Yes, sir, I see it. |

| **Plaintiff's Counsel:** | What facts is Federal relying on for that statement? |
| **Ms. Herron:** | As a reference to Mr. Daugherty's claim? |
| **Plaintiff's Counsel:** | Yes. Yes. |
| **Ms. Herron:** | I don't believe that there was any limitation period. |

*Id.* at p. 130. Ms. Herron was selected by Federal to testify on its behalf in this case, and she clearly states that she does not believe there was a limitations period. Even if the policy was not ambiguous as explained above, this statement could be grounds for finding that Federal has waived the limitations defense entirely. The Court does not elect to do so at this time, however.

The Court finds that an ambiguity exists between the difference in terminology used in the Claim paragraph and the Limitations paragraph. In the face of this ambiguity there are at least two possible interpretation of "complete, written Proof of Loss." Either interpretation is more favorable to Daugherty than Federal's interpretation. Because Kentucky insurance policies are to be construed liberally in favor of the insured and because the policy is ambiguous, the Court finds that Daugherty is not time-barred under the policy.

### III. The Policy is Unambiguous - No Ambiguity is Created by the Use of the Word "Solely."

The Court previously determined that the Plaintiff's case is not time-barred by the limitations provision. The Court now turns to the second issue, whether Daugherty experienced a "Permanent Total Disability" that would entitle him to the benefits of the disability policy. Because the policy requires an insured's "Loss of Use" to be determined by a physician, and because both sides have presented more than a scintilla of evidence on this issue, the Court finds that neither party is entitled to summary judgment. Given the competing evidence in the case, whether or not Daugherty experienced a "Permanent Total Disability" of his feet is a factual

issue to be determined by the jury, not the Court.

In his response and cross motion, Daugherty claims than an ambiguity exists between the policy definitions of "Accidental Bodily Injury" and "Permanent Total Disability."  An "Accidental Bodily Injury" is an injury that is the "direct cause" of a "Loss."  A "Permanent Total Disability" arises from an "Accidental Bodily Injury" that "solely and directly" causes a "Loss of Use."  Daugherty finds ambiguity in these definitions because one uses the term "direct" while the other uses the phrase "solely and directly."  He argues the Court must resolve this ambiguity in his favor.  Unlike the limitations issue, the Court finds that there is no ambiguity created by the differing use of the word "solely."  Because there is no ambiguity, the Court must enforce the ordinary language of the policy as written.  To demonstrate the lack of ambiguity, the Court undertakes a more in depth review of the policy's relevant terms.

Section VI of the Contract defines terms as they are used in the policy.  DN 178-3, pp. 4-5.[2]  The relevant terms are "accident or accidental," "accidental bodily injury," and "permanent total disability."

### i. *Accident or Accidental*

"Accident or accidental means a sudden, unforeseen, and unexpected event which happens by chance, arises from a source external to the Insured Person, is independent of illness, disease, or other bodily malfunction and is the direct cause of loss."  *Id.* at 4.

### ii. *Accidental Bodily Injury*

"Accidental Bodily Injury means bodily injury, which is Accidental and the direct cause of a Loss."  *Id.*

### iii. *Permanent Total Disability*

---

[2] Because the issues in this case revolve around an alleged disability that Plaintiff suffered as a result of injuries to his feet, the Court will only cite the policy provisions that are relevant to the "loss" or "loss of use" of Plaintiff's feet.

Once again, the policy defines "Permanent Total Disability" as:

Accidental Bodily Injur[y] that solely and directly causes [Daugherty's]:

Loss of:

Use of . . . Both Feet . . . which solely and directly:

1) prevent[s] [Daugherty] from engaging in any gainful occupation for which [Daugherty] is qualified, or could be qualified, by reason of education, training, experience, or skill; and

2) cause[s] a condition which is medically determined by a Physician, approved by the Company, to be of continuous and indefinite duration; and

3) require[s] the continuous care of a Physician, unless [Daugherty] has reached [his] maximum point of recovery.

*Id.*

As stated above, Daugherty reads an ambiguity between the definitions of "Accidental Bodily Injury" and "Permanent Total Disability" because the former uses the phrase "direct cause of Loss," while the later uses the phrase "solely and directly causes . . . the Loss of Use." The Court finds that no ambiguity is created by the differing use of "solely" because the term "Accidental Bodily Injury" is subsumed into and is part of the definition of a "Permanent Total Disability."

An "Accidental Bodily Injury" is an injury that is "the direct cause of a Loss." A "Permanent Total Disability" arises from an "Accidental Bodily Injury" that "solely and directly causes the [insured's] Loss of Use . . . ." "Solely" is used in the definition of "Permanent Total Disability" to show that in addition to being a "direct cause of a loss," an "Accidental Bodily Injury" must also be the sole cause of a loss of use. An "Accidental Bodily Injury" must only be the "direct cause of a loss," but for an insured to have a "Permanent Total Disability," he must show that the "Accidental Bodily Injury" "solely and directly" caused the loss of use. The

presence of the word "solely" demonstrates that a "Permanent Total Disability" requires a higher showing than an "Accidental Bodily Injury." To have a "Permanent Total Disability," an insured must eliminate all other causes and show than an "Accidental Bodily Injury" "solely and directly" caused his "Loss of Use." Daugherty has not shown that use of the word "solely" creates an ambiguity between "Accidental Bodily Injury" and "Permanent Total Disability."

## IV. Whether Daugherty Experienced a "Permanent Total Disability" of His Feet is a Question of Fact for the Jury.

With the arguments regarding ambiguities resolved, the Court now turns to the ultimate issue in this case: whether Daugherty is entitled to receive the benefits of the disability policy. Daugherty will only recover the benefits if it is determined that the events of February 23, 2003, left him with a permanent total disability as defined by the policy. Both parties have moved for summary judgment on this issue. Daugherty claims that there is no genuine dispute that the fall caused him to permanently lose the use of his feet. Federal argues vigorously in the opposite direction and asks the Court to find that the undisputed facts show that Daugherty did not lose the use of his feet as a result of the fall. The Court finds that a genuine dispute exists regarding whether Daugherty's fall on February 23, 2003, solely and directly caused him to lose the functionality of his feet, resulting in a permanent total disability. As such, summary judgment on this issue is inappropriate. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996) ("A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).

Before Daugherty can recover the benefits of the policy, he must show that the February 2003 fall caused him to suffer a permanent total disability. As pointed out twice above, "permanent total disability," for the purposes of Daugherty's claims, is:

Accidental Bodily Injury that solely and directly causes [Daugherty's]:

Loss of:

Use of . . . Both Feet . . . which solely and directly:

1) prevent[s] [Daugherty] from engaging in any gainful occupation . . .

2) cause[s] a condition which is medically determined by a Physician, approved by the Company, to be of continuous and indefinite duration; and

3) require[s] the continuous care of a Physician, unless [Daugherty] has reached [his] maximum point of recovery.

DN 178-3, p. 5. "Loss of Use means the permanent and total inability of the specified body part to function, as determined by a Physician." *Id.* Daugherty is entitled to disability benefits if a physician determines that the February 2003 fall solely and directly caused his feet to experience a permanent and total inability to function. Additionally, the loss of use must prevent Daugherty from having "gainful occupation," be of an indefinite duration, and require a physician's continuous care or Daugherty must have reached his maximum recovery. It should be pointed out that a "Physician" is "a person who is licensed as a medical doctor or a doctor of osteopathy under the laws of the jurisdiction in which treatment is given and who is qualified to provide the medical treatment."[3] *Id.*

Daugherty has submitted evidence that his February 2003 fall solely and directly caused his disability. Specifically, Daugherty has submitted the expert opinion of Dr. Craig Roberts. Dr. Roberts conducted an in-person examination of Daugherty on September 29, 2009. DN 170-26. He also reviewed Daugherty's medical records and history provided by Daugherty's treating physicians. *Id.* Dr. Roberts was subsequently deposed on December 9, 2010, and again on July 14, 2011. Dr. Roberts's opinion is that: 1) Daugherty had the functional use of his feet prior to

---

[3] The Court notes that it only relied upon medical evidence provided by individuals meeting this definition for the purposes of deciding whether Daugherty experienced a "loss of use." Statements by non-physician medical personnel were not considered.

his February 2003 fall, 2) Daugherty lost the functional use of his feet after the fall, and 3) the fall caused Daugherty to lose the functional use of his feet. DN 178-12, pp. 7-8. Additionally, it is Dr. Robert's opinion that Daugherty's functional loss of use of his feet: 1) prevents him from engaging in any gainful occupation, 2) is expected to be of a continuous and indefinite duration, and 3) will require the continuous care of a physician. *Id.* at pp. 9-10. In short, Dr. Roberts seeks to testify that the fall caused Daugherty to experience a "permanent total disability" because of a "loss of use of his feet." Dr. Roberts is just one of the supporting cast of doctors that opines Daugherty's February 2003 fall caused him to experience a loss of use of his feet.

In a counterstroke to Daugherty's evidence, Federal's motion for summary judgment is accompanied by its own evidence and expert opinion. Federal claims this evidence definitively proves Daugherty's February 2003 fall was not the sole and direct cause of any disability he has experienced. Specifically, Federal offers the expert opinion of Dr. Thomas Loeb. Dr. Loeb did not examine Daugherty, but he did review his medical history and records and wrote a report based on his review. DN 170-28. Dr. Loeb concludes his report by saying Daugherty's symptoms, "though severe, are in my opinion readily explained by the natural course of his underlying preexisting conditions, which [were] not caused nor altered by the alleged work injury of February 23, 2003." *Id.* at p. 9. In short, Dr. Loeb's opinion is that the February 2003 injury did not solely and directly cause a "loss of use" of Daugherty's feet that resulted in a "permanent total disability." Instead, it is his opinion that Daugherty's disability is the result of conditions that existed prior to the February 2003 fall.

In addition to Dr. Loeb's opinion, Federal presents evidence that Daugherty returned to work after the February 2003 fall and that he made statements to his treating medical personnel that he was ready to return to work. Federal claims that this shows any "loss of use" did not

prevent Daugherty from seeking "gainful occupation" and that he does not have a "permanent total disability" under the policy.

The expert opinions of Dr. Roberts and Dr. Loeb are just some of the evidence that the parties offer in support of their motions. The key issue is whether the accident on February 23, 2003, caused Daugherty to experience a "permanent total disability." If so, Daugherty should recover the benefits of the policy. If not, Federal is under no obligation to award the benefits. Both sides have presented more than a scintilla of evidence on the issue in order to rebut the summary judgment moved for by the opposing party.

In order to have a permanent total disability Daugherty must show that an accidental bodily injury solely and directly caused the loss of use of his feet, which 1) prevents him from engaging in any gainful occupation, 2) is continuous and indefinite, and 3) either requires the continuous care of a physician or a showing that he has reached his maximum possible recovery. Most importantly, "loss of use" means the "permanent and total inability of the specified body part to function, *as determined by a Physician*." DN 178-3, p. 5 (emphasis added). The Court finds that there is a genuine issue of material fact in this case. Both side have presented contradictory opinions by physicians that Daugherty did or did not suffer a loss of use of his feet as a result of the February 2003 fall. Because there is a genuine issue of material fact in this case, summary judgment is inappropriate. It is left to the trier of fact to decide the ultimate issue.


**CONCLUSION**

Plaintiff John Daugherty and Defendant Federal Insurance Company have both moved for summary judgment on the issues presented. The Court finds that there is a genuine dispute as to whether Daugherty experienced a permanent total disability as defined by the policy. Because

a genuine dispute is present, summary judgment is inappropriate. For the foregoing reasons,

Plaintiff's and Defendant's Motions for Summary Judgment are DENIED.